UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Alexander Fuks,  )
 )
    Plaintiff,  )
 )
    v.  )    No. 05 C 5666
 )
Robert Divine, Acting Director, U.S.  )
Citizenship & Immigration Services,  )
Michael Comfort, District Director, U.S.  )
Citizenship and Immigration Services,  )
Chicago District  )
 )
    Defendants.  )

AMENDED

## MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

Plaintiff Alexander Fuks brought a three count complaint seeking "a [w]rit of [m]andamus and [d]eclaratory [j]udgment, declaring or ordering the [d]efendants to declare that Plaintiff is prima facie eligible for [n]aturalization, and ... review [of] the Agency's failure to act on his application for naturalization." (Compl. at 1.) Presently before us is defendants Robert Divine's and Michael Comfort's motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. For the reasons set forth below, we grant defendants' motion and dismiss the action for lack of subject matter jurisdiction.

### BACKGROUND

Alexander Fuks, a permanent resident of the United States, first submitted an application to become an American citizen on March 13, 1997. (Compl. ¶¶ 12, 17.) The U.S. Citizenship and Immigration Services ("the Agency," (formerly the INS)) denied Fuks' application for lack of

1

good moral character on November 5, 1998, and subsequently served him with a notice to appear for removal proceedings ("Notice to Appear") on October 20, 1999. (*Id.* at ¶ 19, Ex. J, K.) Fuks did not appeal the Agency's decision. (*Id.* at ¶ 20.) The Notice to Appear was filed with the Immigration Court on November 3, 1999.

On March 2, 2001, Fuks filed another application for naturalization, which the Agency denied on October 13, 2005 (after Fuks instituted this action and during the pendency of removal proceedings). (*Id.* at ¶¶ 19, 21, p.11; Mot. to Dismiss at Ex. 1.) Fuks did not appeal the Agency's decision to an immigration judge, but rather requested that the Agency vacate their decision *sua sponte*. (Resp. to Mot. to Dismiss at 2-3.)

In August 2005, the Immigration Court sent Fuks' counsel a notice explaining the nature of, and scheduling the hearing for, Fuks' removal. (Compl. at Ex. V.) Seeking to terminate removal proceedings, Fuks requested that the Agency communicate his *prima facie* eligibility for naturalization to the immigration judge. (*Id.* at Ex. U). The District Director of the Agency sent Fuks' attorney a letter, which expressed the Agency's opinion that Fuks was not *prima facie* eligible for naturalization. (Mot. to Dismiss at Ex. 2.)

Instead of appealing the Agency's decision to the Board of Immigration Appeals ("BIA"), he brought a three count complaint in federal court seeking "a [w]rit of [m]andamus and [d]eclaratory [j]udgment, declaring or ordering the [d]efendants to declare that Plaintiff is prima facie eligible for [n]aturalization, and ... review [of] the Agency's failure to act on his application for naturalization." (Compl. at 1.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 12(b)(1) motions to dismiss are premised on

either facial attacks or factual attacks to jurisdiction. "A facial attack is a challenge to the sufficiency of the pleading itself ... A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). When reviewing a motion raising a facial attack to jurisdiction, we must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). However, when presented with a factual attack to jurisdiction, we "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (quoting C*apitol Leasing Co. v. F.D.I.C.,* 999 F.2d 188, 191 (7th Cir. 1993)).

In answering a properly supported Rule 12(b)(1) factual attack, a plaintiff cannot rest on the allegations in the pleadings. *Rittmeyer v. Advance Bancorp, Inc.*, 868 F. Supp. 1017, 1021 (N.D. Ill. 1994). Rather, because the party invoking jurisdiction bears the burden of establishing its requirements, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60, 112 S. Ct. 2130, 2136 (1992), the plaintiff must come forward with "competent proof" supporting its jurisdictional allegations. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995); *see also Kontos v. United States Dept. of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). In other words, the plaintiff must prove to the court by a "preponderance of the evidence or proof to a reasonable probability that jurisdiction exists." *NLFC*, 45 F.3d at 237 (quotation omitted).

## ANALYSIS

Fuks claims that we have statutory jurisdiction pursuant to 8 U.S.C. § 1447(b), mandamus jurisdiction pursuant to 28 U.S.C. § 1361, and that we have the authority to enter a declaratory

3

judgment on his *prima facie* eligibility for naturalization based on the BIA's decision in *Matter of Cruz,* 15 I. & N. Dec. 236 (BIA 1975). We will address each jurisdictional claim in turn.

### A. 8 U.S.C. § 1447(b)

Fuks argues that the Agency's failure to timely consider his naturalization application invokes § 1447(b), which grants district courts jurisdiction to review applications when the Agency neglects to do so in a timely manner. To avoid undue delay in the naturalization process, Congress conferred discretionary jurisdiction upon district courts to conduct hearings on naturalization applications when the Agency does not make a determination within 120 days from the date that the applicant was initially interviewed. 8 U.S.C. §§ 1446(a), 1447(b). Pursuant to § 1447(b), Fuks filed a petition for review in the Northern District of Illinois, alleging that the Agency failed to rule on his application within 120 days from his initial interview.[1] However, Fuks filed his naturalization application after the Agency instituted removal proceedings against him and the Agency is statutorily barred from considering an application during the pendency of such proceedings.[2] 8 U.S.C. § 1429; (Compl. at ¶¶ 19, 21, p.11, Ex. J, K.). Compliance with § 1429 is not an undue delay on the naturalization process, so as to invoke the right to judicial oversight provided by § 1447(b).[3] Therefore, exercising jurisdiction would circumvent the

---

[1] In fact, Fuks admits that the Agency never conducted an initial interview. However, based on our ruling we need not consider whether that bars an applicant from raising a claim under § 1447(b).

[2] The Agency instituted removal proceedings on November 11, 1999, when they filed the Notice to Appear with the Immigration Court. *United States v. Hovsepian*, 359 F.3d 1144, 1165 (9th Cir. 2004) (citation omitted) ("[A] removal proceeding does not 'commence' against an alien until the INS actually files a Notice to Appear with the immigration court."). Fuks filed the naturalization application at issue on March 2, 2001. Therefore, the Agency had no authority to conduct an interview or consider whether Fuks qualified for naturalization. *See* 8 U.S.C. § 1429.

[3] Fuks' reliance on *Hovsepian* is misplaced. In *Hovsepian*, the Ninth Circuit ruled that district courts have exclusive jurisdiction over naturalization applications once the alien files a case in district court pursuant to § 1447(b). 359 F.3d at 1164. *Hovsepian* does not apply because Fuks did not properly

4

legislature's intent to vest sole authority to naturalize in the Attorney General and to suspend the Attorney General's consideration of an alien's application during removal proceedings.[4] *See* 8 U.S.C. §§ 1421(a), 1429.

### B. Mandamus

Next, Fuks points to the remedy of mandamus to establish our jurisdiction. District courts have original jurisdiction in the nature of mandamus over any action which seeks "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, the Supreme Court consistently cautions that "[a] judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would run the real risk of defeating the very policies sought to be furthered by that judgment of Congress." *Kerr v. United States Dist. Ct. N. Dist. Cal.*, 426 U.S. 394, 403, 96 S. Ct. 2119, 2124 (1976). Consequently, courts only grant mandamus relief where the plaintiff demonstrates "(1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002). Fuks appears to seek mandamus relief in two respects, neither of which warrant the exercise of such an extreme remedy.

---

invoke § 1447(b) and thus we have no basis for asserting jurisdiction. Similarly, *Meraz v. Comfort,* No. 05 C 1094 (N.D. Ill. Mar. 21, 2006), is inapplicable. In *Meraz,* the court adopted *Hovsepian* and further found that § 1429 does not strip the district court's jurisdiction once § 1447(b) is triggered. While § 1429 may not divest the district court of its jurisdiction, it also does not provide an independent basis for asserting jurisdiction. Therefore, absent a showing that §1447(b) or § 1421(c) applies, we do not have jurisdiction under the immigration statutes.

[4] If § 1447(b) applies, the district court can "either determine the matter or remand the matter ... to the [Agency.]" As a practical matter, we could not remand the matter to the Agency with instructions to render a decision on the application without forcing the Agency to violate § 1429. Likewise, our independent consideration of Fuks' naturalization application would interfere with congressional intent to vest sole authority for naturalization in the Attorney General. 8 U.S.C. § 1421(a).

First, Fuks claims that he has a clear right to attempt to seek termination of removal proceedings in accordance with 8 C.F.R. § 1239.2, which provides that, "[a]n immigration judge may terminate removal proceedings ... when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors." Relying on the BIA's decision in *Cruz,* Fuks claims that the Agency has a duty to communicate to the immigration judge whether he is *prima facie* eligible for naturalization since neither the immigration judge, nor the BIA, has the authority to make such a determination. *See* 15 I. & N. Dec. at 237. However, we need not decide whether the regulation and the administrative agency's interpretation thereof create a clear legal right to seek termination of removal proceedings or establish a duty for the Agency to communicate an alien's *prima facie* eligibility to the immigration judge because the Agency produced a letter regarding Fuks' *prima facie* eligibility on December 15, 2005, thus rendering the mandamus inquiry moot. (*See* Mot. to Dismiss at Ex. 2.) Since the Agency fulfilled its duty, if any, to render an opinion on Fuks' *prima facie* eligibility for naturalization, the case "no longer presents a live case or controversy." *Belda v. Marshall*, 416 F.3d 618, 620 (7th Cir. 2005). "It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S. Ct. 1660, 1665 (1983).

Recognizing the absence of a live case or controversy, Fuks suggests that the Agency has a duty to render an affirmative communication to the immigration judge that he is in fact *prima facie* eligible for naturalization. We cannot direct the Agency to exercise their discretion in such a manner under the guise of mandamus. *See United States ex rel. McLennan v. Wilbur*, 283 U.S.

6

414, 420, 51 S. Ct. 502, 504 (1931) ("[Mandamus] will issue only where the duty to be performed is ministerial and the obligation to act peremptory and plainly defined. The law must not only authorize the demanded action, but require it[.]").

Rather than mandamus relief, Fuks essentially seeks review and reversal of the Agency's decision that he is not *prima facie* eligible for naturalization. However, we cannot consider the propriety of the Agency's assessment absent jurisdiction. As discussed above, we lack statutory and mandamus jurisdiction in this action. In fact, Congress explicitly precluded judicial review of "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified ... to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]"[5] 8 U.S.C. § 1252(a)(2)(B)(ii). Therefore, we cannot review the Agency's finding regarding Fuks' *prima facie* eligibility.[6]

### C. Declaratory Judgment

Fuks relies on *Cruz* as authority for us to independently assess his *prima facie* eligibility for naturalization. In *Cruz*, the BIA held that "prima facie eligibility may be established by ... a

---

[5] Fuks could have appealed the Agency's decision regarding his *prima facie* eligibility to the BIA, which has the authority to "review all questions arising in appeals from decisions issued by Service officers de novo." 8 C.F.R. § 1003.1(d)(3)(iii).

[6] However, Fuks has the ability to challenge the Agency's finding when he appears before the immigration judge. The Agency based its (invalid) denial of Fuks application and its finding that Fuks was not *prima facie* eligible on prior convictions that occurred over sixteen years ago. To become naturalized, an alien must show good moral character in the five years preceding his application. 8 U.S.C. 1427(a). While the Agency can consider "the applicant's conduct and acts at any time prior to [the five year] period," *Meraz* approvingly referenced other courts which have held that a naturalization application cannot be denied *solely* on the basis of prior convictions "if the applicant demonstrates exemplary conduct during the specified statutory period[.]" No. 05 C 5666, at 6 (quoting *Hovsepian*, 422 F.3d at 886 (internal quotation omitted)). Fuks may be able to persuade an immigration court that it would be unjust to find him *prima facie* ineligible for naturalization - thus precluding his ability to terminate removal proceedings - based solely on his prior convictions when the Agency could not deny his naturalization application for those reasons alone.

7

declaration of a court that the alien would be eligible for naturalization but for the pendency of the deportation proceedings[.]" 15 I. & N. Dec. at 237. Congress, however, stripped federal courts' power to naturalize in 1990, leaving the Attorney General with sole authority to conduct naturalizations. *See* 8 U.S.C. § 1421(a). We agree with the Ninth Circuit that *Cruz*'s viability is questionable "given that courts no longer naturalize" and because "the BIA cannot confer jurisdiction on the federal courts, or enlarge the scope of review, beyond that granted by Congress." *De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1047 (9th Cir. 2004).

Congress has determined that we only have jurisdiction to review the denial of a naturalization application or to consider the application in the first instance where the Agency fails to take any action in a timely manner. *See* 8 U.S.C. §§ 1421(c), 1447(b). Having determined that 1447(b) does not apply, we now turn to 1421(c) to assess whether we have jurisdiction so as to consider Fuks' eligibility for naturalization.

Section 1421(c) provides that, "[a] person whose application for naturalization ... is denied, after a hearing before an immigration officer under section 1447(a) ... may seek review [from a federal district court.] Such review shall be de novo[.]" Fuks, however, asks us to review the denial of his naturalization application without having appealed the Agency's decision to an immigration judge in accordance with 1447(a).[7]

Parties must generally "exhaust prescribed administrative remedies before seeking relief from the federal courts ... [so as to] protect[] administrative agency authority and promot[e]

---

[7] Fuks claims that § 1447(a) did not apply because the Agency's decision was void *ab initio*. (Resp. to Mot. to Dismiss at 2-3.) The administrative appellate scheme was designed to redress the Agency's errors, so there is no reason why Fuks should not have raised the alleged legal error with an immigration judge within the statutory period after the Agency failed to respond to Fuks' request to vacate their decision *sua sponte*.

judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 144-45, 112 S. Ct. 1081, 1085 (1992); *see also Iddir,* 301 F.3d at 498. That principle applies with special force to immigration plaintiffs "because there are explicit statutory requirements in certain sections of the INA and a comprehensive administrative review scheme exists." *Iddir*, 301 F.3d at 498; *see also McCarthy*, 503 U.S. at 145 ("Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise.").

Nonetheless, exhaustion may be excused where:

(1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite time frame for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Iddir*, 301 F.3d at 498 (quotation omitted). None of these exceptions to exhaustion apply to Fuks.

First, Fuks' appeal would not be prejudiced by unreasonable delay because the appellate hearing before the immigration judge must be conducted expeditiously to comply with statutory regulations. 8 C.F.R. § 336.2(b) (stating that hearings before an immigration officer must occur within 180 days from receipt of an alien's request).

Second, the immigration judge has the "authority and discretion to review the application for naturalization, to examine the applicant, and either to affirm" the Agency's decision or redetermine the issue *de novo*. *Id*. Consequently, seeking review of the Agency's procedural or legal errors before an immigration judge would not be futile. In fact, pursuing such a course of action would enable the administrative agency to correct its own errors, which is one of the

9

purposes of requiring parties to exhaust administrative remedies. *See McCarthy*, 503 U.S. at 145.

Third, nothing indicates a likelihood of bias since the immigration judge presiding over the appellate hearing must be "an officer other than the officer who conducted the original examination[.]" 8 C.F.R. § 336.2(b). Finally, Fuks does not raise any constitutional questions which would warrant excusal from the exhaustion requirement. Therefore, Fuks' failure to exhaust his administrative remedies bars our review of the Agency's ruling on his naturalization application under § 1421(c). *See* 8 U.S.C. § 1421(c); *see also Chavez v. INS,* 844 F. Supp. 1224 (N.D. Ill. 1993).

Likewise, we cannot enter declaratory relief because the Declaratory Judgment Act ("DJA") does not provide an independent basis for jurisdiction. 28 U.S.C. § 2201(a); *see also Aetna Life Ins. Co. of Hartford, Conn. v. Hartworth*, 300 U.S. 227, 240, 57 S. Ct. 461, 464 (1937), *overruled on other grounds by Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1067-68 (Fed. Cir. 1998); *Amoakowaa v. Reno*, 94 F. Supp. 2d 903, 906 (N.D. Ill. 2000) (holding that the DJA does not confer jurisdiction upon federal courts). The Declaratory Judgment Act merely created a remedy that was otherwise unavailable "[i]n a case of an actual controversy within [a court's] jurisdiction." 28 U.S.C. § 2201(a); *see also Nucor Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 577 (7th Cir. 1994). Since Fuks cannot establish a basis for subject matter jurisdiction, we are without authority to render declaratory relief.

## CONCLUSION

For the reasons discussed above, we grant defendants' motion and dismiss the case for lack of subject matter jurisdiction. It is so ordered.

                                        MARVIN E. ASPEN
                                        United States District Judge

Dated : 4/14/06