Aleksandr Fuks,                              )
                              Plaintiff,     )
                                             )
            v.                               )        No. 05 C 5666
                                             )
Robert Devine, Acting Director, U.S. Citizenship )
and Immigration Services; Michael Comfort,   )
District Director, Chicago Office, U.S. Citizenship )
and Immigration Services;                    )
                                             )
                              Defendants.     )

## MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

Fuks filed a complaint in the Northern District of Illinois seeking 1) a writ of mandamus "ordering Defendants to communicate to the Immigration Court whether it believes that the Plaintiff is prima facie eligible for naturalization;" 2) review of his naturalization application and/or his *prima facie* eligibility for naturalization; or 3) an order for the United States Citizenship and Immigration Services ("the Agency") to review the naturalization application and/or submit a letter regarding his *prima facie* eligibility to the Immigration Court. (Compl. ¶¶ 7-11.) In response to the complaint, defendants filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (Mot. to Dismiss. at 1-9.) We granted defendants' motion. Presently before us is Fuks' motion to alter and amend the judgment.[1]

---

[1] We will assume familiarity with our opinion and the facts of the case. We will restate the facts only as necessary to examine the issues.

A.      **8 U.S.C. § 1447(b)**

In our opinion granting defendant's motion to dismiss ("Opinion"), we explained at length why 8 U.S.C. § 1447(b) did not serve as a basis for jurisdiction in this case.  *See Fuks v. Divine*, No. 05 C 5666, 2006 WL 1005094 (N.D. Ill. Apr. 14, 2006).  Section 1447(b) allows naturalization applicants to petition the district court to review their naturalization application where the Agency fails to take action after 120 days from the initial interview.  Fuks relies upon *United States v. Hovsepian,* 359 F.3d 1144 (9th Cir. 2004), and *Meraz v. Comfort,* No. 05 C 1094, 2006 WL 861859 (N.D. Ill. Mar. 9, 2006), to support his assertion that we have jurisdiction under § 1447(b).  The *Hovsepian* and *Meraz* courts found that once 1447(b) is properly invoked, it grants exclusive jurisdiction to the district court.  *Hovsepian,* 359 F.3d at 1159-1164; *Meraz*, 2006 WL 861859, at *2-3.  Those cases further found that § 1429, a provision that bars the Attorney General's consideration of a naturalization application during the pendency of removal proceedings, did not divest the district court of § 1447(b) jurisdiction.  *Hovsepian*, 359 F.3d at 1164-1167; *Meraz*, 2006 WL 861859, at *3-5.  While we agree with *Hovsepian* and *Meraz*, they have no bearing on Fuks' claims.  Unlike the plaintiffs in *Hovsepian* and *Meraz*, Fuks did not properly invoke § 1447(b).  The plaintiffs in *Hovsepian* and *Meraz* each filed their naturalization applications prior to the institution of removal proceedings whereas Fuks filed his naturalization application well after the Agency instituted removal proceedings against him.  In our prior opinion, we explained that § 1447(b) did not apply because the Agency was statutorily prohibited from considering Fuks' application during the pendency of removal proceedings, thus they could not be penalized for failing to act.  Allowing Fuks to take advantage of § 1447(b), a safeguard in place to ensure that the Agency acts in a timely manner, would circumvent Congress' intent for the Agency to make naturalization decisions in the

2

first instance and to require the Agency to postpone such consideration during the pendency of removal proceedings. *See Fuks*, 2006 WL 1005094, at *2-3. Fuks failed to submit any persuasive authority challenging our statutory interpretation and neither *Hovsepian* nor *Meraz* stand for the proposition that § 1447(b) can be invoked when an individual submits a naturalization application during the pendency of removal proceedings.

**B.      8 U.S.C. § 1421©**

After exhausting the prescribed administrative remedies, applicants can seek judicial review of a denial of their naturalization petition pursuant to 8 U.S.C. § 1421©.[2] However, we determined § 1421© did not apply to Fuks because plaintiff failed to appeal the denial of his naturalization application to an immigration officer.[3] *Fuks,* 2006 WL 1005094, at *4-5.[4]

In his motion to alter or amend the judgment, Fuks argues that we should overlook his failure to exhaust because an appeal would be futile and plaintiff would suffer prejudice. First, Fuks claims that appealing the denial of his application would be futile because the Agency could not approve

---

[2]      Fuks' complaint sought relief under § 1447(b) since the Agency had not rendered a decision on his application at the time the suit was filed. However, after Fuks filed the instant action, the Agency denied his application. As a result, in response to the motion to dismiss, Fuks suggested that we had jurisdiction under 8 U.S.C. § 1421©. In an abundance of caution, we addressed § 1421© in our opinion as an alternative basis for asserting jurisdiction.

[3] In fact, we referred to an immigration judge rather than an immigration officer. As the parties correctly point out, the statutory scheme mandates an administrative appeal to an immigration officer from the Agency. 8 CFR § 336.2(b). While it does not affect our analysis of the issue, we hereby amend our decision to reflect the correct administrative review scheme.

[4] *See also Holasek v. U.S. Dep't of Justice,* 123 F. Supp. 2d 1126, 1129 (N.D. Ill. 2000) ("[A]s a matter of jurisdiction, a court may not review the administrative decisions of the INS unless the appellant has exhausted all administrative remedies available."); *Chavez v. INS*, 844 F. Supp. 1224, 1225 (N.D. Ill. 1993) ("Chavez is essentially asking us to review the INS' denial without the benefit of a hearing before an immigration officer. We cannot agree with Chavez, however, that the legislature ever intended § 1447(b) to permit a district court to circumvent the appeals process provided for by statute."); 3C Am. Jur.2d Aliens & Citizens 3002 (2003).

his petition during the pendency of removal proceedings. However, an administrative review of the Agency's decision would have allowed the Agency to correct any purported errors, i.e. the denial of an application during the pendency of removal proceedings in apparent violation of § 1429 and the administrative regulations. While the Agency could not approve the naturalization application, they could have reversed their decision to deny the petition, leaving it pending until the termination of removal proceedings. *See Saba-Bakare v. Ridge,* No. 04 C 4588, 2006 WL 1350298, at *2 (S.D. Tex. May 16, 2006). Given the current procedural posture, it is unlikely that we could do much more. *See De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1046-47 (9th Cir. 2004). Second, plaintiff argues that he would be prejudiced due to undue delay in finding him *prima facie* eligible. It is unclear how this argument is related to seeking review of the denial of his naturalization application. Moreover, review hearings with immigration officers must be conducted expeditiously in accordance with statutory mandates.[5]

Accordingly, we find no error with our analysis of the exceptions to the statutory jurisdictional exhaustion requirement. *See Omari v. Gonzales,* No. 05 C 0397, 2005 WL 2036498, at *4 (N.D. Tex Aug. 11, 2005) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081 (1992) ("Where, as here, exhaustion of administrative remedies is required by statute, exhaustion is jurisdictional and must be enforced.").

C.    **Mandamus**

Fuks' complaint sought a writ of mandamus "ordering Defendants to communicate to the

---

[5] If plaintiff filed a timely appeal with an immigration officer he would have had a final determination no later than 180 days from the time he submitted his request thus affording him sufficient time to seek judicial review. *See* 8 CFR § 336.2(b).

Immigration Court whether it believes that [he] is prima facie eligible for naturalization." (Compl. at 10.) Courts grant mandamus relief where a plaintiff demonstrates "(1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Iddir v. INS,* 301 F.3d 492, 499 (7th Cir. 2002); 28 U.S.C. §1361. In response to the motion to dismiss, Fuks claimed that he has a clear right to attempt to seek termination of removal proceedings, which requires that he establish *prima facie* eligibility for naturalization. *See* 8 C.F.R. § 1239.2. He further argued that the Agency has a duty to communicate to the immigration judge whether he is *prima facie* eligible since *Matter of Cruz* foreclosed the possibility of immigration judges or the BIA making such determinations. 15 I. & N. Dec. 236, 237 (1975). We did not determine whether the Agency had a clear and ministerial duty to communicate plaintiff's *prima facie* eligibility to the immigration court because we found that the claim for mandamus "no longer present[ed] a live case or controversy." *Fuks v. Divine*, 2006 WL 1005094, at *3 (quoting *Belda v. Marshall,* 416 F.3d 618, 620 (7th Cir. 2005)). Since the Agency sent the immigration court a letter regarding Fuks' *prima facie* eligibility on December 15, 2005, Fuks' request that we "order[] Defendants to communicate to the Immigration Court whether it believes that [he] is prima facie eligible for naturalization[]" is moot. (Mot. to Dismiss Ex. 2.); *see Holasek,* 123 F. Supp. 2d at 1128.

Rather than dispute our holding, Fuks contends that we erred by failing to review the substance of the Agency's letter. He claims that we can exercise mandamus jurisdiction to "instruct an official how to exercise discretion [where] that official has ignored or violated 'statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised." (Mot. to Alter & Amend at 4 (quoting *Silveyra v. Moschorak,* 989 F.2d 1012, 1015 (9th Cir. 1993).)

Fuks argues that the Agency "ignored the statutory and regulatory standards governing the decision to be made" by finding him prima facie ineligible based on his decades-old criminal convictions. (*Id.* at 4.)  The only "standard" he cites is the BIA's decision in *Cruz*, wherein the court indicated that an applicant may establish *prima facie* eligibility by obtaining "an affirmative communication from the [Agency] ... that the alien would be eligible for naturalization but for the pendency of deportation proceedings or the existence of an outstanding order of deportation."  15 I.& N. Dec. at 237.  Since Fuks points to no statutes or regulations that describe the nature of or requirements for determining *prima facie* eligibility, we cannot say that the Agency violated such statutory or regulatory standards.

Fuks' argument is based upon his interpretation of the *Cruz*.  He believes that *prima facie* eligibility is limited to a showing of what is statutorily required for naturalization rather than consideration of permissible factors.  (Mot. to Alter & Amend at 4-5.)  The Agency has statutory authority to consider an applicant's conduct at any time while he has been in the United States when assessing whether that applicant has the requisite good moral character to qualify for naturalization. 8 U.S.C. § 1427(e); 8 C.F.R. §§ 316.2(7), 316.10(a)(2).  The Agency based its finding that Fuks was not *prima facie* eligible for naturalization on his prior felony criminal convictions.  In particular, the Agency noted the severity and reprehensibility of one of plaintiff's crimes: aggravated criminal sexual abuse of a minor.  (Mot. To Dismiss Ex. 2 ("Because of his serious criminal misconduct while in the United States, I do not consider him prima facie eligible for naturalization and I believe that his removal would serve the best interests of the United States.").)  Fuks failed to provide any support for his contention that the Agency is precluded from considering such permissible factors in determining an applicant's *prima facie* eligibility.

Fuks' claim that the Agency cannot base their decision upon his criminal convictions because those convictions served as the basis for the institution of removal proceedings is unpersuasive. While *Cruz* contemplated the Agency rendering a decision on *prima facie* eligibility despite the pendency of removal proceedings (which would generally serve as a bar to naturalization), the BIA did not purport to preclude the Agency from considering the totality of the circumstances of an individual's candidacy. In this case, the Agency determined that Fuks' criminal history, which incidentally qualified him for removal, prevented them from finding that he was a person of good moral character who is *prima facie* eligible for naturalization. *See* 8 C.F.R. §§ 316.2(7), 316.10(a)(2)**.**

In addition, contrary to Fuks' claims, we cannot say that the Agency's letter raises issues of good faith. (Mot. to Alter & Amend at 4.) Fuks points to the timing of the letter to evince bad faith, but such a claim is belied by the fact that the Agency denied plaintiff's naturalization application in 1999 for the same reason that they did not find him *prima facie* eligible for naturalization in 2005. In addition, he does not dispute that he has multiple felony criminal convictions. Since the Agency's decision does not appear arbitrary, vengeful, or in bad faith, we have no basis for asserting mandamus jurisdiction.

D.    **Declaratory Judgment Act ("DJA")**

Despite seeking a declaratory judgment that he is *prima facie* eligible for naturalization, Fuks does not appear to dispute our conclusion that the DJA does not provide an independent basis for jurisdiction. Nor does he take issue with our conclusion that the BIA cannot confer original jurisdiction upon us. *See De Lara Bellajaro*, 378 F.3d at 1047. In *Cruz*, the BIA held that only the district courts and the Agency could establish prima facie eligibility for purposes of terminating

7

removal proceedings.  15 I. & N. Dec. at 237.  However, *Cruz* was decided at a time when district courts had the power to naturalize aliens.  Since *Cruz*, Congress amended the immigration laws and granted the Attorney General exclusive jurisdiction over naturalizations. 8 U.S.C. § 1421(a).  Consequently, and as discussed in our Opinion, we do not have authority to declare individuals *prima facie* eligible in the first instance.

### E.      Federal Question Jurisdiction

Without clearly expounding upon his argument, Fuks now claims that we have federal question jurisdiction to review the Agency's decision on his *prima facie* eligibility pursuant to 28 U.S.C. § 1331 and the Administrative Procedure Act ("APA"), 5 U.S.C. § 704.  (Mot. to Alter & Amend at 3.)  As a threshold matter, the Agency rendered its decision on Fuks' *prima facie* eligibility for naturalization after plaintiff filed the instant action.  Thus, the complaint did not (and does not) contain a claim for review of the Agency's action.   However, because leave to amend should be freely granted, we will examine Fuks' arguments to determine whether it would be futile to afford plaintiff an opportunity to file an amended complaint.  *See* Fed. R. Civ. P. 15(a), (d); *see also Guise v. BWM Mortg.*, *LLC,* 337 F.3d 795, 801 (7th Cir. 2004) (upholding district court's refusal to grant leave to amend the complaint on grounds of futility).

Fuks suggests that the Agency's letter is legally erroneous because 1) it is predicated upon the fact that he is deportable and 2) the Agency never (or could not have) found that he lacked good moral character.  Fuks' first argument fails for the same reason described above.  *See* Section C, *supra*.  The Agency's letter specified that Fuks was not *prima facie* eligible for naturalization because his serious criminal convictions rendered a finding of good moral character suspect.

Fuks next argues that the Agency failed to provide him an opportunity to submit evidence regarding his good moral character. However, he does not point to any statute or regulation mandating that the Agency conduct an in-depth examination or interview to assess *prima facie* eligibility. In fact, requiring such a process would circumvent the legislature's intent to postpone active consideration of naturalization applications during removal proceedings and it would run counter to the concept of *prima facie* findings. *See* 8 U.S.C. § 1429.

Finally, Fuks fleetingly mentions that "some courts hold that [activities outside the five year statutory period] may not form the only basis for a denial [of a naturalization application]." (Resp. to Mot. to Dismiss at 14.) To the extent that Fuks intends to argue that the Agency's letter is legally flawed because his old convictions cannot serve as the sole basis for finding him *prima facie* ineligible for naturalization, he may have a valid claim. Applicants have the burden of demonstrating good moral character for "the five years immediately preceding the date of filing" the naturalization application. 8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.10(a)(1)-(2). Under the law, Fuks' convictions do not statutorily bar him from showing good moral character, but they can be used to evaluate his present moral character. *See* 8 U.S.C. § 1101(f)(8) (precluding a finding of good moral character for aliens convicted of aggravated felonies after 1990); *Hovsepian*, 422 F.3d at 886 ("Conduct occurring outside the regulatory period is relevant only insofar as it bears on [an applicant's] *present* moral character.") (emphasis in original).

However, many courts have held that the Agency cannot base a decision on an applicant's moral character solely on events outside of the statutory period for purposes of evaluating

naturalization applications.[6]  By extension, Fuks argues, an applicant should not be denied *prima facie* eligibility for naturalization based solely on activity outside of the statutory period.  Since the Agency's letter denying that Fuks is *prima facie* eligible is based solely on his decades-old convictions, Fuks has a plausible argument that the Agency's decision is erroneous.

Nonetheless, we need jurisdiction to review such a claim. The combination of the current statutory scheme and the immigration court's holding in *Cruz* limits Fuks' options for seeking relief. As he points out (and the Agency does not dispute), there is no statutory or regulatory mandatory administrative review of the Agency's finding of *prima facie* eligibility. Also, in light of *Cruz*, the immigration courts do not serve as a check on the Agency or provide an alternate route for seeking a declaration of *prima facie* eligibility.  *See* 15 I. & N. Dec. at 237; 8 C.F.R. § 1003.1b1-12. Moreover, standing alone, a determination on *prima facie* eligibility is not a final order subject to review by the Seventh Circuit.  8 U.S.C. § 1252(a)(5), (b)(9).  Therefore, if there is no basis for us to exercise jurisdiction, Fuks may not be able to challenge the Agency's determination of *prima facie* eligibility until the completion of the removal proceedings (rendering the possibility of terminating such proceedings moot).[7]

_____

[6] *See, e.g., United States v. Hovsepian,* 422 F.3d 883 (9th Cir. 2005) ("[I]f [an] applicant demonstrates exemplary conduct during the specified statutory period, 'then his application cannot be denied based solely on his prior criminal record.'"); *Marcantonio v. United States*, 185 F.2d 934 (4th Cir. 1950) ("It is not permissible, however, to base denial of naturalization of the commission of crimes prior to the five year period, for the effect of this is to add to the statute a condition which it does not contain."); *Meraz,* 2006 WL 861859, at *3, n.5**;** *Gizzo v. INS*, No. 02 C 4879, 2003 WL 22110278, at * 3 (S.D.N.Y. Sept. 10, 2003); *see also Gatcliffe v. Reno*, 23 F. Supp. 2d 581, 585 (D. VI 1998) ("There is extensive authority, however, that it is impermissible to rely solely on acts outside the statutory period."); *Tan v. U.S. Dep't of Justice, Immigration & Naturalization,* 931 F. Supp. 725, 730 (D. Haw. 1996).

[7] Although, it appears as though Fuks could have appealed the Agency's finding under 8 C.F.R. § 103.5(a)(1)(I), which allows individuals to file a motion for reconsideration of any

10

We cannot review Fuks' *prima facie* eligibility in the first instance because Congress vested sole authority to naturalize in the Attorney General. 8 U.S.C. § 1421(a). Also, the APA does not provide jurisdiction because the Agency's letter is not a final agency decision and no statute authorizes judicial review of such decisions. 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action not directly reviewable is subject to review on the review of the final agency action."); *Saba-Bakare,* 2006 WL 1350298, at *4*; see also Afsharzadehyadzi v. Perryman*, 214 F. Supp. 2d 884, 888 (N.D. Ill. 2002); *Holasek,* 123 F. Supp. 2d at 1129. While we have the ability to address legal or constitutional errors, we must do so within the confines of the statutory scheme. *See* 8 U.S.C. §§ 1252(a)(2)(d), (a)(5), (b)(9). We are prohibited from reviewing the Agency's discretionary decisions or the Agency's decision to institute, adjudicate, or terminate removal proceedings. 8 U.S.C. §§ 1252(a)(5), (g). Therefore, granting him leave to amend the complaint to request our review of the eligibility letter would be futile.

## CONCLUSION

For the reasons described above in footnote 3, we hereby modify our opinion to reflect the proper administrative agency review procedure for the Agency's denial of a naturalization application. Plaintiff's motion for reconsideration of our decision to grant defendant's motion to dismiss is denied. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Date: July 20, 2006

---

Agency action when the individual believes that "the decision was based on an incorrect application of law or Service policy." 8 CFR § 103.5(3).